LOTTINGER, Judge.
Plaintiff-appellant, Byrne, Rice & Turner, Inc., filed this suit to recover the sale price of $1,977.02 for a winch plaintiff delivered to defendant-appellee, Calíais & Calíais Boat Rentals, Inc., on open account. After a trial on the merits, the trial judge ruled in favor of the defendant and dismissed the suit. Plaintiff brings this de-volutive appeal from the judgment of the Lower Court.
The only issue before the Lower Court was whether the defendant had ordered the winch in question from the plaintiff. The question before us is whether the Lower Court’s interpretation of the evidence before it' was manifestly erroneous.
A portion of plaintiff’s statement of the case, taken from its brief, follows:
“In May 1966, Weber Callais, President of Calíais and Calíais Boat Rentals, Inc. (R.150), telephoned Gilbert Graf, a salesman at the time for Byrne, Rice & Turner, Inc., in New Orleans, Louisiana (R.88), and told him that he wanted a winch exactly like one he had previously purchased. (R.89). Gilbert Graf quoted the price of the winch to Weber Calíais on the telephone. (R. 90, 95, 97). Cal-íais told Graf he wanted the winch ‘as quickly as possible.’ (R. 90, 95).
“The winch was not carried in stock by plaintiff and had to be assembled. (R. 91, 227). About seven to ten days were required to assemble the winch. (R. 91). The winch was then shipped, via Saia Motor Freight Line, to Calíais at the Golden Meadow Net Shop in Golden Meadow, Louisiana pursuant to the request of Weber Calíais when he ordered the winch. (R. 95, 106). Weber Calíais owned the Golden Meadow Net Shop and it was normal for him to request that delivery of items purchased for Cal-íais and Calíais Boat Rentals, Inc. be delivered to the net shop ‘because that was the only place that the freight line could bring it’ (R. 177, 121, 132, 172).
The sale of the winch was F.O.B. New Orleans (R.97). The freight charges were to be paid by defendant (R. 97, 109; Ex. B^l).
“The winch was dropped and damaged while being unloaded at the Golden *921 Meadow Net Shop (R. 114). Delivery of the winch was accepted, however, by Morris Martin,, an employee of Weber Calíais for 19 years. (R. 109, 1976; Ex. B-l). Defendant then made a claim against Saia Motor Freight Line for the damage done to the winch during delivery. (Ex. B-6). The claim was denied by Saia. (Ex. B-1S) Suit was then filed on behalf of Calíais and Calíais Boat Rentals, Inc. against Saia Motor Freight Line, Inc. in Civil District Court for the Parish of Orleans to recover for the damages to the winch during delivery. (Ex. B-18 [R. 53-55]). That suit is still pending.
“Defendant has not paid plaintiff any part of the purchase price due for the winch. (R. 132).”
It is defendant’s position that he did not place a telephone order for the winch with the plaintiff. It is his position that on an occasion when he was at the plaintiff’s place of business buying equipment for a new boat he was building that he was asked by plaintiff’s salesman, Gilbert Graf, whether or not he would need a winch. The defendant says that he answered Mr. Graf by saying, “Yes, sir, I will .need a winch.”, but he said, “I will not need a winch for maybe four or five months.” (R. 150) Defendant contends that he in no way authorized Mr. Graf to deliver said winch to him, and that he was surprised when the winch was delivered because he was not expecting it.
Plaintiff’s suit was built around the testimony of three witnesses, Gilbert Graf, the salesman who allegedly took defendant’s order; Atwood Rice, an officer of plaintiff-corporation; and Edward P. Lob-man, an attorney in the same firm representing plaintiff herein who was the attorney of record in the suit by Calíais and Calíais Boat Rentals, Inc. against Saia Motor Freight Line, Inc.
Gilbert Graf testified that Weber Cal-íais, owner of defendant-corporation, telephoned him at plaintiff’s place of business in New Orleans, and ordered a winch for a boat he was building or had built and said that Mr. Calíais asked him to get it as quick as he could. The testimony of Atwood Rice was that he had corresponded by mail, telephone, and personally met with Weber Calíais in an attempt to get the winch paid for, and that throughout all of the negotiations, Mr. Calíais never denied having ordered the winch. It must be pointed out that most of this correspondence between Mr. Rice and Mr. Calíais was one-sided and for the most part carried on solely by Mr. Rice inasmuch as Mr. Calíais can not write and can read very little. The few written replies received by Mr. Rice from Mr. Calíais were written for Mr. Calíais by others. Mr. Edward P. Lobman is an attorney in the firm which has represented plaintiff-corporation for a number of years, and the file on this was turned over to him when he was a young associate with the firm. Plaintiff had Mr. Lobman contact Mr. Calíais about the claim against Saia. Mr. Lobman wrote Mr. Calíais on numerous occasions asking for written authority for his firm to represent Calíais in the suit against Saia. Mr. Lobman testified that fearing prescription would run on the claim, and not having received any reply from Mr. Calíais, he finally telephoned Mr. Calíais and got authority to file suit against Saia.
Mr. Weber Calíais maintained that he had not ordered the winch in controversy, and that if he had ordered it, he would have had it delivered to the location of the boat that was being built rather than to the location to which it was delivered some five or six miles distance. Defendant further introduced into evidence the invoice for the winch which was placed on the boat he was building showing that it costs $628.32, some one-third of the amount of the winch plaintiff shipped to him. In rebuttal to the testimony of Mr. Lobman, Mr. Calíais testified as follows:
“They want to sign for the firm to represent me and I said, ‘I’m not going to do that because I didn’t buy the winch *922 and the winch is not mine and it is right there. I just want you all to come over and pick it up’, and that’s it. That’s all I wanted.”

“No. I didn’t want to have anything to do with them because I didn’t hire no lawyer because I didn’t have a reason to hire a lawyer because I hadn’t bought no winch. I didn’t have no winch. So why the lawyer wanted to represent me? For what? Where would they get the authority to represent me ?”

“Not that I remember. Maybe I did, because you see everytime I get mail I bring it to Ronald and he read it, but those people there, they bug me so much, telephone and telephone and letter and letter and bug and bug until I call them. The last time I talk, I say, ‘Look I don’t want you to represent me. I never asked you to represent me'. Why you just bugging me with letters and telephone calls?’ That’s what I told the man. I didn’t have nothing for him to represent.”
This court finds the testimony of Mr. Calíais completely consistent throughout long cross examination, and considering this with Mr. Calíais’ lack of education and occasional difficulty of the English language, we must give his testimony considerable weight.
We now quote a paragraph from the Trial Court’s Reasons for Judgment which seems to sum up the interpretation of the evidence by the Trial Judge:
“In short a review of all of the evidence and exhibits introduced forces the Court to conclude that while presumptions or assumptions might be made from some of the ‘evidence’ presented, it is primarily of a negative nature. The burden is not on defendant to prove that it did not order the winch, or that it did not acknowledge the order by authorizing the suit against Saia in its name, rather the burden is on plaintiff to prove by a preponderance of the evidence that the defendant did in fact order the winch, which is the subject of this suit. This would appear to be a case where a salesman, eager to make a sale, presumed too much from a casual conversation and authorized a winch to be shipped on a presumption. It was a gamble that might have paid off, except that when the winch was damaged on delivery, it became a completely different situation, and he was then forced into the position of insisting that there had been a valid order.”
The Trial Judge had the opportunity to witness the demeanor of each of the witnesses, and based on the record, we certainly can not find his interpretation of the testimony to be erroneous. The Trial Judge is certainly correct in his statement of the law that the burden is not on the defendant to prove that it did not order the winch. Rather, the burden is on plaintiff to prove by a preponderance of the evidence that the defendant did in fact order the winch. The Trial Judge certainly could not be found to be in error in holding that the plaintiff had not met this burden of proof.
For the above and foregoing reasons, the judgment of the Lower Court dismissing plaintiff’s suit is affirmed, all costs including the costs of this appeal to be paid by plaintiff-appellant.
Judgment affirmed.